UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
SAMUEL BOSTIC,                             :
                                           :
                          Petitioner,      :        **MEMORANDUM AND ORDER**
                                           :        **ADOPTING REPORT AND**
            -against-                      :        **RECOMMENDATION**
                                           :
SUPERINTENDENT, WOODBOURNE                 :        09-CV-3540 (DLI) (VVP)
CORRECTIONAL FACILITY,                     :
                                           :
                          Respondent.      :
------------------------------------------------------------ x

**DORA L. IRIZARRY, U.S. District Judge:**

Petitioner Samuel Bostic ("Petitioner") brings this petition for a writ of *habeas corpus*

("Petition") pursuant to 28 U.S.C. § 2254. (Doc. Entry No. 1.) Petitioner is currently serving a

prison sentence of 12 years, having been convicted of assault in the first degree under section

120.10[1] of the New York Penal Law, following a jury trial in New York State Supreme Court,

Kings County. Petitioner argues he was denied his constitutional right to present a complete

defense when the trial court excluded an audio recording of a 911 call. On September 13, 2012,

the Hon. Viktor V. Pohorelsky, U.S. Magistrate Judge, issued a Report and Recommendation

("R&R") recommending the Petition be denied. (*See* R&R, Doc. Entry No. 15.)[1] Petitioner

timely objected. (*See* Objection, Doc. Entry No. 16.) Respondent responded to the Objection in

a short letter stating the R&R was well-reasoned and should be adopted. (Response Letter to

Objection, Doc Entry No. 17.) For the reasons set forth below, the R&R is adopted in its entirety

and the Petition is denied.

## BACKGROUND

The facts that led to Petitioner's conviction arise out of the non-fatal shooting of Larrell

---

[1] Familiarity with the R & R, as well as the procedural history and relevant facts of this case, is assumed. (*See generally* R&R, Docket Entry 15.)

Hendricks ("Hendricks") on February 10, 2003 at his apartment building in Brooklyn, New York. Hendricks suffered non-fatal injuries and was treated at Kings Country Hospital for a gunshot wound to his back. (R. 609-13.)[2] The victim's identification of Petitioner as one of his assailants is the principal factual issue of the Petition.

There was no dispute that Hendricks and Petitioner were acquaintances. (R. 500-03, 536-37.) After hearing a gunshot, Hendricks' wife, Scotti Washington, found Hendricks lying on the floor of the stairwell of their apartment building. (R. 450-52.) Washington called 911 and, while connected to the 911 operator, asked Hendricks, "Who was it?" (R.452-53, 465-66.) At trial, Washington and Hendricks contradicted each other as to whether Hendricks had responded to this question. Hendricks testified that he was certain he had identified Petitioner, when asked by Washington in the stairwell, "Who was it?" (R. 524-25, 545.) Washington testified that, when she was on the line with the 911 operator, she twice asked Hendricks, "Who was it?" but Hendricks did not respond. (R. 466-67.) The detectives investigating the shooting testified that, during an interview at the hospital, Hendricks identified Petitioner as one of his assailants within hours of the shooting, and then again, approximately a month later, through a one-way mirror at the police station. (R. 351-54, 394-95, 476-77.)

In the audio recording of Washington's 911 call, Washington could be heard asking Hendricks who shot him without a response from Hendricks. (R. 604-05.) At trial, defense counsel sought to introduce the 911 call recording to show that Washington, not Hendricks, testified truthfully as to whether Hendricks identified Petitioner immediately after the shooting. (R. 605-08.) The trial court excluded the 911 call recording as cumulative of Washington's testimony. (R. 604-08.) Based on these facts, the jury acquitted Petitioner of attempted murder,

---

[2] Citations to "R." refer to the trial transcript of the jury trial in New York Supreme Court, Kings County, and citations to "S." refer to the sentencing proceedings in the same court.

but convicted him of assault in the first degree, N.Y. Penal Law § 120.10. (R. 746.) He was sentenced to a determinate prison term of 12 years. (S. 8.)

Petitioner appealed his conviction to the Appellate Division, Second Department, of the Supreme Court of the State of New York ("Appellate Division"), which affirmed the conviction on February 19, 2008. *People v. Bostic*, 48 A.D. 3d 696 (2d Dep't 2008.) Petitioner sought leave to appeal to the New York Court of Appeals and, on May 19, 2008, was denied leave. *People v. Bostic*, 10 N.Y. 3d 860 (2008). The Appellate Division subsequently denied Petitioner's motion for leave to reargue his appeal. *People v. Bostic*, Slip Op. 2004-00765 (2d Dep't June 5, 2008).

## DISCUSSION

When a party objects to a R & R, a district judge must make a *de novo* determination with respect to those portions of the R & R to which the party objects. *See* FED. R. CIV. P. 72(b); *United States v. Male Juvenile*, 121 F. 3d 34, 38 (2d Cir. 1997). The district court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b); *see also* 28 U.S.C. § 636(b)(1).

As set forth in the R&R, the magistrate judge found that the trial court's ruling precluding admission of the 911 call was not an arbitrary evidentiary ruling, because: (a) the 911 call was cumulative; and (b) even if the evidence had not been cumulative, it was not material to Petitioner's case. (R&R at 11, 13.) Petitioner objected to the R&R contending that the magistrate judge: (1) failed to distinguish the case law on cumulative evidence because the 911 call recording was "direct" evidence of the conversation in the stairway between Hendricks and Washington (Obj. at 2); (2) failed to consider that Hendricks had a motive to falsely identity

3

Petitioner as his assailant and, without the 911 recording, Petitioner could not adequately present his claim of recent fabrication (*id.* at 3); (3) misinterpreted Petitioner's "he said she said" argument as suggesting Washington and Hendricks' testimony were at equipoise, when, instead, Petitioner contended the testimony was competing (*id.* at 4); and (4) failed to consider that, although the defense was able to impeach Hendricks, impeachment was not useful to establish recent fabrication and inconsistencies would not matter, if the jury believed Hendricks had named Petitioner immediately after the shooting. (*Id.*)

The Court has reviewed the record, the relevant case law, the R&R, and Petitioner's objections to the R&R. Many of the objections consist of restatements of the arguments raised in the Petition. It is clear from review of the magistrate judge's thorough and well-reasoned R&R that the magistrate judge disposed of each of Petitioner's claims appropriately, supporting his findings with abundant factual and legal support.

First, Petitioner objects to the magistrate judge's reliance on *Correia v. Meachum*, 201 F. 3d 430 (2d Cir. 1999) in finding that the facts evidenced by the 911 call had already been presented to the jury through the testimony of Washington. (Obj. at 2; *see* R&R 12.) Petitioner also objects to the reliance on *George v. Lord*, 334 F. Supp. 2d 327 (E.D.N.Y. 2004) in finding that the evidence was not material to Petitioner's case. (Obj. at 2; *see* R&R 13.) Petitioner maintains the preclusion of the 911 call recording was "far different" from the preclusions upheld in these cases.

Petitioner argues the 911 call recording is direct evidence, unlike the precluded evidence in *Correia*. In *Correia*, the court found the evidence was appropriately excluded because the written testimony at issue was cumulative of oral evidence offered at trial and the complainant did not deny making the apparently inconsistent statements. *See Correia*, 201 F. 3d at 430.

4

Similarly, here, the 911 recording is cumulative evidence of Washington's testimony. That Hendricks, as the declarant, did not admit making apparently inconsistent statements, does not distinguish this case sufficiently from *Correia*. Just as the written testimony in *Correia* was cumulative of oral evidence at trial, the 911 recording, here, was cumulative of Washington's oral evidence at trial. Therefore, while the cases may have factual differences, they are still sufficiently analogous and the magistrate judge appropriately found that "[a]s in *Correia*, the facts evidenced by the 911 recording had already been presented to the jury through the testimony of the victim's wife, and the jury nonetheless chose to convict Bostic." (R&R at 12.)

In *George*, the court found that the exclusion of non-cumulative impeachment evidence was neither material to Petitioner's defense nor did it hamper Petitioner from presenting various theories of defense. The statement sought to be introduced in *George* varied only slightly from the witnesses' trial testimony; defense counsel already had impeached the witness on other prior statements; and, in summation, defense counsel presented the defense theories of the case. *George*, 334 F. Supp. 2d at 334-35. As in *George*, the exclusion of the 911 call recording did not hamper Petitioner's ability to present the recent fabrication theory and defense counsel was able to put forth the recent fabrication theory before the jury. As the magistrate judge explained:

> In connection with this argument, the defense made several points, including that there were at least eight contradictions in Hendricks' testimony either with his prior grand jury statements or as compared to the statements of other witnesses. This included an argument that the contradiction between the Petitioner and his wife's testimony about what he said to her right after he was shot raised doubts about the reliability of his later identification. The defense also pointed out that Hendricks' testimony that he gave the police the Petitioner's full name when he was first interviewed was contradicted by the officers who testified that he only identified the Petitioner by his nickname. The defense also explored Hendricks' prior criminal history and repeated failure to report shootings he had witnessed in the neighborhood to the police.

(R&R at 14-15.)  After reviewing *George* and the record, this Court finds, as the magistrate judge did, that the defense's theory of recent fabrication "was sufficiently explored throughout its case and the jury chose to reject it."  (R&R at 15.)

Second, contrary to Petitioner's objection, the magistrate judge did specifically address Petitioner's claim of recent fabrication, including Hendricks' motive to fabricate, and properly concluded that the 911 recording did not present anything new or exculpatory.  (*See* R&R at 14.)  Petitioner argued in the Petition, and again in the Objection, that Hendricks first named Petitioner as his assailant to the detectives several hours after the shooting, once he had an opportunity to fabricate.  (Pet. at 14, 18; Obj. at 3.)  Petitioner maintains he was not able to adequately argue recent fabrication without the 911 call recording.[3]

Any additional proof that Hendricks was silent when Washington asked who shot him would not have created a new basis for reasonable doubt for the jury, nor did it hamper defendant's ability to present a recent fabrication defense.  As stated above, the record establishes that defense counsel raised several points in connection with the recent fabrication claim.  (*See id.* at 14-15; R. 675-77.)  Moreover, while the 911 call recording merely establishes that Hendricks did not respond while on the stairwell, impeachment by defense counsel, inconsistencies in his testimony, his prior criminal history, and repeated failures to report shootings he witnessed earlier went directly to Hendricks' propensity to lie and the fabrication claim.  (*See* R&R at 14-15.)  After reviewing the record, the Court agrees with the magistrate

---

[3] The recent fabrication theory was argued at trial (R. 675-77) and in the Petition (Pet. 18-19).  Petitioner explains the "recent fabrication" theory in greater specificity in the Objection.  According to Petition, Hendricks' motive to falsely identify Petitioner arose out of a pair of shootings, which occurred in December and early February of 2003.  These shooting occurred between friends and acquaintances of both Hendricks and Petitioner.  (Obj. at 3.)  In the second of these shootings, which occurred a week before Hendricks was shot, Petitioner's close friend was the victim.  (R. 387, 528.)  Hendricks thought that Petitioner believed Hendricks had set up this close friend.  (R. 539.) , Therefore, Petitioner argues Hendricks' motive to identify Petitioner as his own shooter was to remove the threat to himself of Petitioner avenging his friend.  (Obj. at 3.)

judge that Petitioner's recent fabrication claim was "sufficiently explored" throughout the case. (*Id.*)

Third, Petitioner maintains that the magistrate judge misinterpreted Petitioner's argument as suggesting the testimony of Washington and Hendricks were at equipoise. (Obj. at 4.) Petitioner asserts he was arguing that the testimony was competing, because without the 911 call, the jury was free to conclude that Hendricks correctly identified Petitioner. However, whether or not Washington's and Hendricks' testimonies were at equipoise, the record establishes that a reasonable jury would have had several reasons to credit Washington's testimony over Hendricks' testimony had it chosen to do so. For example: Hendricks admitted he was semi-conscious when Washington asked him who had attacked him, while Washington was unharmed and alert. (R. 544-45.) Washington, as Hendricks' wife, would be more likely to support his testimony than contradict him if he were telling the truth, and, therefore, her testimony reflected a lack of bias. (R&R at 11.) Defense counsel impeached Hendricks on a number of statements, and in summation noted multiple contradictions and gaps in Hendricks' testimony. (R. 634-53.) Hendricks' testimony that he was "sure [he] responded" on the stairwell is directly preceded by testimony that he did not remember whether he responded and that he did not respond. (R. 544-45.) Therefore, the magistrate judge correctly found that, "[t]he 911 call may have bolstered Washington's testimony, but it did not add anything to it – Petitioner already had the benefit of the fact that Hendricks did not name him on the stairs." (*See* R&R at 11 (citing *Forman v. Azzara*, 23 A.D. 2d 793 (2d Dep't 1965)).)

Moreover, Petitioner assigns too much weight to the 911 call recording and on Hendricks' failure to identify Petitioner on the stairwell. It does not directly follow from the 911 call recording that Hendricks fabricated the subsequent identifications of Petitioner. All the 911

7

call recording demonstrates is that Hendricks did not respond while he was on the stairwell. It does not tell us why he testified to the contrary or why he identified Petitioner thereafter. Instead, the 911 call recording and the recent fabrication claim are connected only by a string of inferences.

Lastly, Petitioner argues that defense counsel's impeachment of Hendricks would be useless if the jury believed Hendricks named Petitioner during the 911 call. However, it is precisely Hendricks' impeachment and the inconsistencies in his testimony, along with the quality of Washington's testimony, that presented more than sufficient evidence for the jury to determine the credibility of each witness. Based upon the record of this case, the Court finds no basis, either in law or in fact, to disturb the credibility findings of the trial jury in this case. *See U.S. v. Shi Xing Dong*, 2013 WL 791289, at *1 (2d Cir. March 5, 2013) (Witness credibility determinations are the sole and exclusive province of the jury (citing *U.S. v. Sabhnani,* 599 F. 3d 215, 241 (2d Cir. 2010))).

In conclusion, the 911 call recording was not the crucial, explanatory piece of evidence Petitioner makes it out to be. The magistrate judge appropriately concluded that the trial court's decision to exclude the 911 recording as cumulative evidence, and the Appellate Division's affirmance of that ruling, was neither "contrary to," nor an "unreasonable application" of, clearly established federal law. Again, the magistrate judge appropriately applied well-settled legal principles in reaching his conclusions and recommendations. Accordingly, the Court hereby adopts the R&R in its entirety.

## CONCLUSION

For the reasons discussed above, the R & R is adopted in full. The claim for *habeas corpus* relief pursuant to 28 U.S.C. §2254 is denied. Petitioner is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* Fed. R. App. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. N.Y. State Div. of Parole*, 209 F. 3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
          March 20, 2013

/s/
DORA L. IRIZARRY
United States District Judge
